# UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF FLORIDA
### TALLAHASSEE DIVISION

SHONDOLYN BLEVINS,

       Petitioner,

v.                             Case No.  4:16-cv-789-WS/MJF

WARDEN OF FCI TALLAHASSEE,

       Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner Shondolyn Blevins has filed a second amended petition for writ of habeas corpus under 28 U.S.C. § 2241. (Doc.6). Respondent ("the Government") filed an answer, providing relevant portions of the administrative record. (Doc. 24). Blevins replied. (Doc. 27). For the reasons set forth below, the undersigned recommends that the petition be denied.[1]

## I.    Background

Blevins is currently confined at the Carswell Federal Medical Center in Fort Worth, Texas. In this habeas action, Blevins challenges a prison disciplinary

---

[1] The case was referred to the undersigned to address all preliminary matters and to issue a recommendation to the district court regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

conviction she received at the Federal Correctional Institution in Tallahassee, Florida, that resulted in the loss of good conduct time ("GCT").

On August 21, 2016, Blevins was involved in an altercation with a fellow inmate ("Inmate Doe"). Blevins claimed that Inmate Doe assaulted her and that she merely defended herself. Officer M. Harrell investigated the incident and, on August 31, 2016, charged both inmates with violating Prohibited Act 201 - Fighting with another person. (Doc. 6, p. 3; Doc. 24, Ex. 2; *see also* 28 C.F.R. § 541.3, Table 1 – *Prohibited Acts and Available Sanctions*). Blevins was charged in Incident Report No. 2890735. (Doc. 24, Ex. 2).

Lieutenant Winner delivered a copy of the Incident Report to Blevins on August 31, 2016, and conducted his/her own investigation where the following evidence was collected: (1) statements from Blevins and Inmate Doe, (2) Officer Harrell's investigative memorandum, (3) photographs of Blevins and Doe taken after the incident and (4) medical assessments of Blevins and Doe conducted after the incident. (Doc. 24, Ex. 2, pp. 1, 2). Lt. Winner referred the matter for a disciplinary hearing. (*Id.*, p. 2). Blevins received notice of the hearing on September 4, 2016. (Doc. 24, Ex. 3).

The disciplinary hearing was held on September 22, 2016. (Doc. 24, Ex. 5). Blevins appeared and was provided the assistance of a staff representative, who

spoke on Blevins' behalf. (*Id.*). Blevins testified and called a witness, who presented

testimony through a written statement. (*Id.*).

The Disciplinary Hearing Officer ("DHO"), Officer Orr, found Blevins guilty

of fighting with another person. Officer Orr explained this decision in a written

report dated September 27, 2016:

> The DHO finds you committed the prohibited act of fighting with another person, code 201.
>
> You stated you were ready to proceed. You request P. Dahlstrom, Chaplin as your staff representative to assist you in preparing your defense and [inmate's name redacted] as your witness. Due to inmate [redacted] being in general population and you are house in the Special Housing Unit a secured unit she did not appeared before the DHO in person due to security reason. However, she submitted a written statement in your defense. You stated you understood your rights before the DHO. You stated you received your copy of the incident report. You have been afforded due process and have had ample time to prepare a defense prior to the discipline hearing.
>
> It is the decision of the DHO that you committed the prohibited act of code 201, fighting with another person. This decision is based on the statement of the reporting officer. Officer M. Harrell stated an investigation was completed on August 31, 2016 and revealed on August 21, 2016 at approximately 7:30 a.m. Inmate [Doe], Reg. No. [redacted] confronted you, in cub D03-013 in reference to something she thought you was saying specifically that you was going to whip her. You and [Doe] got into a heated verbal argument which included name calling and it led to you walking out of the cube and bumping into [Doe]. You and [Doe] exchanged more words until she pushed you back into the corner of the cube and stroked you in the face. You then scratch her about the face and neck. Your finger came close to [Doe's] mouth and she bit the pad of your left pointer finger. [Doe] and you were medical assessed and received injuries consisted with being in a physical altercation. Staff provided photographs, medical assessments. Memorandums as evidence.

The DHO considered your medical assessment which indicated you had multiple superficial scratches to the posterior upper neck, numerous superficial scratches to the right shoulder, three superficial scratches to the anterior neck-chine area and a cut on the second (pointer) finger on the left hand. Inmate [Doe's] medical assessment was completed on August 23, 2016 and shows no injuries; However she was photographed with scratches to her face and neck. This is consistent with the fact that you was scratching [Doe] about the face when she bit your finger.

Your staff representative appeared before the DHO and stated he reviewed the photographs and stated he observed starches on [Doe's] upper lip and neck and you had starches on your neck and jaw line.

You appeared before the DHO and stated I was not fighting she had me on the wall and the stretches in my back came from a hook on the wall. Your witness [inmate's name redacted] wrote in her written statement. A fight took place in D/N with two inmates. She reports one of the inmates was in front of the other inmate cube starting drama. They said a couple of words and it went from there the inmate hit first was called [Doe]. She hit Shonata first and they started it going meaning fighting each other.

The DHO determined based on the evidence above and the greatest weight of the evidence you did commit the act fighting with another person, code 201. The greatest weight is considered the officer written report, SIS Investigation, the medical assessments and photos of the both of you documenting injuries sustained. Accordingly, it is the finding of the DHO that you committed the prohibited act as charged.

(Doc. 24, Ex. 5, p. 2) (spelling, typographical and grammatical errors in original).

The severity of Blevins' offense was rated "High" pursuant to BOP regulations.

(Doc. 24, Ex. 5, p. 2; *see also* 28 C.F.R. § 541.3, Table 1 – *Prohibited Acts and Available Sanctions*, "High Severity Level Prohibited Acts").

As a result of the conviction, Blevins lost 27 days of GCT, spent 20 days in disciplinary segregation, and lost telephone privileges for 63 months. (*Id*.). DHO Orr provided these reasons for the disciplinary action:

> Fighting can lead to serious injury to both parties as well as staff and could have escalated into a major confrontation between inmates and/or staff and threatens the security of the institution. The behavior displayed by this violation of discipline could have led to a more serious injury to you, and serious injury to the other inmate involved. Fighting undermines discipline and cannot be allowed to go unpunished.
>
> Disciplinary segregation was imposed due to the severity of your offense. It is apparent that your adjustment in population has been poor up to this point. Hopefully, this sanction will influence your future decisions to commit offenses such as these.
>
> Good conduct time was disallowed because of the severity of the offense and to deter this activity in the future. It is apparent your conduct reflects poor institution adjustment and does not warrant the same consideration for good conduct time as those inmates following the rules and regulations of the bureau of prisons.
>
> Loss of privileges was imposed due to your poor institution adjustment and behavior. This privilege is meant for those inmates who follow rules and regulations and do not present a management problem for staff or pose a threat to the security of the institution, self, or others. It is apparent, that by your conduct, you do not value these privileges.
>
> These sanctions have been imposed to correct the present inappropriate behavior and deter future behavior of this type. The DHO hopes that the sanctions will motivate you towards more self-discipline in the future.

(Doc. 24, Ex. 5, p. 2).

The written report informed Blevins that she had 20 calendar days to appeal the action. (Doc. 24, Ex. 5, p. 3). DHO Orr signed the report on September 27, 2016.

(*Id.*). Underneath Orr's signature block is an area for recording the date and time the report was delivered to Blevins, including the printed name and signature of the staff member delivering the report. (Doc. 24, Ex. 5, p. 3). The date and time indicate: "9/27/2016 2:50 pm", but there is no staff member's printed name or signature affirming that the report was delivered to Blevins. (*Id.*). Blevins attempted to appeal the DHO's decision, but her appeal was rejected on November 30, 2016. (Doc. 6, p. 4). Blevins does not indicate the reason it was rejected. (*Id.*).[2]

Blevins initiated this habeas proceeding on December 20, 2016. (Doc. 1). On March 15, 2017, a staff member delivered a copy of the DHO's report to Blevins at her then place of confinement – the Federal Correctional Institution in Dublin, California. (Doc. 24, Ex. 7; Doc. 27, p. 4). Blevins attempted to appeal the DHO's decision by delivering her Regional Administrative Remedy Appeal to a prison official on March 29, 2017, and requesting that it be mailed by certified mail.  (Doc. 27, Ex. A, Blevins Decl. and Attach., pp. 7-9). Blevins received no response to her appeal. (*Id.*). Blevins learned that the appeal was not documented in the BOP's Sentry system, nor was there any record of a certified mailing in the United States Postal Service's records. (*Id.*).

---

[2] Blevins's first amended petition attached copies of rejection notices, but those notices pertained to Blevins's appeal of a different disciplinary decision, namely Incident Report No. 2897384. (Doc. 5, Attach.).

Blevins now challenges her disciplinary conviction on due process grounds, claiming: (1) the disciplinary hearing officer ("DHO") was biased; (2) there was insufficient evidence to support the conviction; (3) she was deprived of the right to appeal the DHO's decision; (4) the rule prohibiting "fighting with another person" is unconstitutionally vague; (5) the Government forfeited its right to oppose Blevins's administrative appeal by failing to promptly notify her of the DHO's decision; and (6) the greater weight of the evidence supported a finding that she was the victim of the assault and used no more force than was necessary to defend herself. (Doc. 6, pp. 3-5). Neither Blevins's second amended petition, nor any of her earlier petitions, includes a demand for relief. (Docs. 1, 5, 6). The undersigned assumes Blevins seeks expungement of the disciplinary report and restoration of her lost GCT. The Government argues that each of Blevins's claims fails on the merits.

## II.    Due Process Standard for Prison Disciplinary Proceedings

A prisoner has a liberty interest (in this case, created by federal law) in her earned good conduct time and, accordingly, must receive due process before those credits are revoked in a prison disciplinary proceeding. *See Wolff v. McDonnell*, 418 U.S. 539, 558, 94 S. Ct. 2963, 2975 (1974); *O'Bryant v. Finch*, 637 F.3d 1207, 1213 (11th Cir. 2011) (same as to state prisoner deprived of state-created liberty interest in gain time). In *Wolff*, the Supreme Court held that "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due

a defendant in such proceedings does not apply." *Wolff*, 418 U.S. at 556, 94 S. Ct. at 2974. The Court established the following minimum procedural requirements due a prisoner before her GTC credits are revoked: (1) at least 24 hours' notice of the charges so the prisoner can prepare for the hearing; (2) a written statement by the factfinder of the evidence relied upon and the reasons for the disciplinary action taken; and (3) the qualified right to call witnesses and present documentary evidence, if not "unduly hazardous to institutional safety or correctional goals." *Wolff*, 418 U.S. at 563-66, 94 S. Ct. at 2978-80.

The Supreme Court later addressed the quantum of evidence necessary to support the disciplinary hearing officer's decision. In *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455-56, 105 S. Ct. 2768, 2774 (1985), the Court held: "revocation of good time does not comport with the 'minimum requirements of procedural due process' unless the findings of the prison disciplinary board are supported by some evidence in the record." *Id.*, 472 U.S. at 454, 105 S. Ct. at 2773. The Court elaborated:

> This standard is met if "there was some evidence from which the conclusion of the administrative tribunal could be deduced" . . . . Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board.

*Id.*, 472 U.S. at 455, 105 S. Ct. at 2774; *see also Young v. Jones*, 37 F.3d 1457, 1460

(11th Cir. 1994) (observing that the federal courts should not be "judging and reweighing the evidence presented in a prison disciplinary hearing," rather, the "role of this court is to determine whether an inmate receives the procedural protections provided by *Wolff* and whether 'some evidence' exists which supports the hearing officer's determination").

"*Wolff* also holds that a prison hearing board must be 'sufficiently impartial to satisfy the Due Process Clause.'" *Jacoby v. Baldwin Cty.*, 835 F.3d 1338, 1350 (11th Cir. 2016) (quoting *Wolff*, 418 U.S. at 571, 94 S. Ct. at 2982); *see also Edwards v. Balisok*, 520 U.S. 641, 647-48 (1997) (holding that if established, a prisoner's allegation of deceit and bias by the hearing officer at his disciplinary proceeding "would necessarily imply the invalidity of the deprivation of his good-time credits"). The Court in *Wolff* approved a disciplinary process as sufficiently impartial where it provided for investigation and an initial interview with the inmate by a staff member, followed by a hearing before a committee comprised of other prison officials who were not part of the investigation. *Wolff*, 418 U.S. at 571, 94 S. Ct. at 2982. As to the particular decisionmaker (in *Wolff*, an Adjustment Committee), the Court considered these factors:

> The Committee is not left at large with unlimited discretion. It is directed to meet daily and to operate within the principles stated in the controlling regulations, among which is the command that "full consideration must be given to the causes for the adverse behavior, the setting and circumstances in which it occurred, the man's accountability, and the correctional treatment goals," as well as the

direction that "disciplinary measures will be taken only at such times and to such degrees as are necessary to regulate and control a man's behavior within acceptable limits and will never be rendered capriciously or in the nature of retaliation or revenge."

*Id.* The Court held: "We find no warrant in the record presented here for concluding that the Adjustment Committee presents such a hazard of arbitrary decisionmaking that it should be held violative of due process of law." *Id.*

As a final matter, the Court in *Wolff* observed that due process does not require the opportunity for administrative review of the disciplinary decision. The Court noted that the requirement of a written statement by the decisionmaker "helps to insure that administrators, faced with possible scrutiny by [other] officials and the public, and perhaps even the courts, . . . will act fairly." *Wolff*, 418 U.S. at 565, 94 S. Ct. at 2979.

## III.    Discussion

### A.    <u>Ground One: "DHO Officer had Preset Disposition/Biased"</u>

Blevins claims she was deprived of due process because DHO Orr was biased. (Doc. 6, p. 3). In support, Blevins alleges: "DHO Officer Orr had a preset disposition. Refused to allow Blevins to speak. Was rude. Heard co-defendant 2 weeks prior on 9-7-2016." (*Id.*). Blevins elaborated in her proposed administrative appeal that two weeks prior to finding Blevins guilty, the DHO conducted Inmate Doe's disciplinary hearing and found her guilty of fighting. (Doc. 27, Ex. A, Attach. 1, p. 8).

After *Wolff*, neither the Supreme Court nor the Eleventh Circuit has elaborated a more specific standard for evaluating a claim of bias on the part of a disciplinary hearing officer. In the analogous context of administrative hearings, the Supreme Court has recognized "a presumption of honesty and integrity in those serving as adjudicators." *See Withrow v. Larkin*, 421 U.S. 35, 47, 95 S. Ct. 1456, 1464 (1975); *id.*, 421 U.S. at 55, 95 S. Ct. at 1468 ("Without a showing to the contrary, state administrators are assumed to be men of conscience and intellectual discipline, capable of judging a particular controversy fairly on the basis of its own circumstances." (internal quotation marks and citation omitted)); *Schweiker v. McClure*, 456 U.S. 188, 195, 102 S. Ct. 1665, 1670 (1982) (holding that courts "must start . . . from the presumption that the hearing officers . . . are unbiased."); *see also Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003) (stating that prison adjudicators are entitled to a presumption of honesty and integrity). The party who alleges bias has the burden of overcoming the presumption of impartiality. *Schweiker*, 456 U.S. at 195-96, 102 S. Ct. at 1670; *Withrow*, 421 U.S. at 47-48, 95 S. Ct. at 1464; *Johnson v. U.S. Dep't. of Agric.*, 734 F.2d 774, 783 (11th Cir. 1984).

Blevins's allegation that DHO Orr did not allow her to speak at the hearing is belied by the record. The record demonstrates that Orr allowed Blevins to make a statement, and considered that statement along with Blevins's other evidence in making his/her decision. (Doc. 24, Ex. 5, p. 2).

Blevins's allegation that DHO Orr was "rude" does not provide a colorable basis to find a due process violation, because it is conclusory and wholly devoid of factual support. *See, e.g., Nash v. Auburn Univ.*, 812 F.2d 655, 665 (11th Cir. 1987) (holding, in the context of a college disciplinary proceeding, that a court may not infer that the disciplinary board was biased; "Any alleged prejudice on the part of the board must be evident from the record and cannot be based in speculation or inference."); *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 518 (10th Cir. 1998) ("[B]ecause honesty and integrity are presumed on the part of a tribunal, there must be some substantial countervailing reason to conclude that a decisionmaker is actually biased with respect to factual issues being adjudicated." (internal quotation marks omitted)). Furthermore, "an adjudicator's remarks during the course of a proceeding 'that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge.'" *Liteky v. United States*, 510 U.S. 540, 555, 114 S. Ct. 1147, 1157 (1994). Even a "stern and short-tempered" disposition alone is insufficient to demonstrate bias. *Liteky*, 510 U.S. at 556, 114 S. Ct. at 1157. In short, bias or partiality is not established by "expressions of impatience, dissatisfaction, annoyance, and even anger, that are within the bounds of what imperfect men and women . . . sometimes display." *Id.* at 555-56, 114 S. Ct. at 1157.

Blevins's final allegation of bias is that DHO Orr also presided over Inmate

Doe's disciplinary proceeding. The BOP regulations provide: "The DHO will be an impartial decision maker who was not a victim, witness, investigator, or otherwise significantly involved in the incident." 28 C.F.R. § 541.8(b). Blevins does not allege that Orr was involved in any way with the underlying incident; that Orr conducted the investigation of the incident; or that Orr authorized the charge. The fact that Orr also presided over Inmate Doe's hearing does not, in and of itself, suggest bias. *See McWhorter v. City of Birmingham*, 906 F.2d 674, 678 (11th Cir. 1990) ("Ordinarily, a judge's ruling in the same or a related case may not serve as the basis for a recusal motion." (citing *Jaffe v. Grant*, 793 F.2d 1182, 1189 (11th Cir. 1986)); *Paradis v. Arave*, 20 F.3d 950, 958 (9th Cir. 1994) (holding that a defendant does not establish bias simply by alleging that the judge presided over a co-defendant's trial: "Paradis' entire argument is based upon the mistaken notion that a trial judge's exposure to evidence, standing alone, demonstrates bias. This supposition is unsound and contrary to existing law."); *United States v. Cowden*, 545 F.2d 257, 265-66 (1st Cir. 1976) (holding that the mere fact that a judge presided over the separate trial of a codefendant does not "constitute reasonable grounds for questioning his impartiality in a subsequent . . . trial involving a remaining codefendant.").

Further, the record belies Blevins's assumption that Orr's officiating over Inmate Doe's hearing undermined his/her impartiality. Orr's written decision reflects that: (1) the findings of fact are based solely on the evidence adduced at

Blevins's hearing; (2) Orr considered that evidence independently, without regard to any factual determinations or finding of guilt made in Inmate Doe's hearing; and (3) the disposition of Doe's disciplinary proceeding played no role in Orr's finding Blevins guilty of fighting.

Blevins has not shown that the DHO exhibited bias. Blevins, therefore, is not entitled to relief on Ground One.

### B.    Grounds Two and Six: "Insufficient Evidence" and "Greater Weight of Evidence"

Blevins argues in Ground Two that the evidence was insufficient to support the DHO's finding of guilt because "Incident Report greatly over exaggerated. Photos prove Blevins was assaulted." (Doc. 6, p. 3). Blevins makes the related argument in Ground Six that there was conflicting evidence and that the DHO's decision was not based on the greater weight of the evidence (namely, Blevins's evidence that she was acting in self-defense and not fighting). (Doc. 6, p. 5; Doc. 27, p. 3).

The Government argues that: (1) the DHO's finding was based on and supported by the "written incident report, SIS investigation, medical assessments, and pictures of both inmates."; (2) the record established that Blevins "engaged first in a verbal altercation with another inmate which led to her 'bumping' the other inmate."; (3) "a self-defense claim does not ordinarily apply if the person in question provoked the initial conflict."; and (4) "there are penological justifications to treat

Page 14 of 22

self-defense as a mitigating factor rather than a complete defense." (Doc. 24, p. 11).

The DHO's report identified the evidence supporting Blevins's guilt, including the reporting and investigating officers' memoranda containing statements from Blevins and Inmate Doe. Both inmates acknowledged having a verbal argument. Inmate Doe stated that Blevins then "bumped" Doe. The two exchanged more words until Doe pushed Blevins into a corner and struck Blevins in the face. Blevins started scratching Doe about the face and neck, and Doe responded in kind. When Blevins's finger came close to Doe's mouth, Doe bit it. (Doc. 24, Ex. 5, p. 2 (DHO Report); Doc. 24, Ex. 2, p. 1 (Incident Report); Doc. 24, Ex. 2, p. 2 (SIS Investigation Report)). An inmate eyewitness (Blevins's witness) stated that Blevins and Inmate Doe exchanged words; that Doe hit Blevins first; and that "they started it going meaning fighting each other." (Doc. 24, Ex. 2, p. 2).

The DHO's report also identified a medical assessment showing Blevins had multiple superficial scratches to her neck, shoulder and neck/chin area, as well as a cut on her finger. (Doc. 24, Ex. 5, p. 2). Photographs of Inmate Doe right after the incident revealed scratches on her face, upper lip and neck, consistent with Blevins's scratching Doe's face. (*Id.*).

Although Blevins identifies arguments and evidence supporting her claim of self-defense, (Docs. 6, 27), "[a]scertaining whether [the 'some evidence'] standard is satisfied does not require examination of the entire record, independent assessment

of the credibility of witnesses, or weighing of the evidence." *Hill*, 472 U.S. at 455, 105 S. Ct. at 2774. The evidence the DHO relied on – the written incident report, SIS investigation, medical assessments, photographs of both inmates, statements from Doe, Blevins and the inmate eyewitness, and the statement of Blevins's staff representative – could support the conclusion that Blevins fought with Inmate Doe. *Hill*, 472 U.S. at 456, 105 S. Ct. at 2774 (holding that prison guard's testimony and copies of his written report supported the conclusion that the evidence before the disciplinary board was sufficient to satisfy the due process requirements); *Anderson v. FCC Coleman-USP II Warden*, 649 F. App'x 730, 731 (11th Cir. 2016) (holding that a prison employee's statement that the inmate was exchanging punches with another inmate constituted sufficient evidence to support the DHO's finding that the inmate was fighting with another person).

There was some evidence supporting the DHO's finding of guilt, which is sufficient to satisfy the Due Process Clause. Blevins's Grounds Two and Six, therefore, should be denied.

## C.    Grounds Three and Five: "Refused Right to Appeal" and "Region Forfeited Right to Object to Appeal"

Blevins claims in Ground Three that she was denied her right to an administrative appeal, in violation of due process, because the BOP inordinately delayed providing her a copy of the DHO's report. (Doc. 6, p. 4). Blevins claims in Ground Five that the BOP's failure to timely provide her with a copy of the DHO's

report "forfeits their right to deny relief." (Doc. 6, p. 5).

The Government argues that Blevins could have appealed the DHO's decision after she received the DHO's report on March 15, 2017, therefore, she was not prejudiced or denied the right to an appeal. (Doc. 24, pp. 12-13). The Government does not raise an exhaustion defense.

Blevins responds that prison officials' failure to follow administrative procedures violated her right to due process, and that she was prejudiced because she was transferred to a different prison, where she submitted an appeal but it never reached the reviewing authority through no fault of her own. (Doc. 27, pp. 2-3 in ECF).

Blevins's claims fail for several reasons. First, Blevins has not shown that prison officials' actions deprived her of an administrative appeal. Blevins's petition asserts that her first appeal was rejected on November 26, 2016, but does not indicate the stated reason for the rejection. (Doc. 6). Blevins also does not indicate that she ever attempted to seek a belated appeal (or an extension of time to appeal) after her second appeal was lost. *See* 28 C.F.R. § 542.15(a) (allowing for appellate time limits to be extended when the inmate demonstrates a legitimate reason for delay); 28 C.F.R. § 542.14(b) (describing valid reasons for delay).

Second, even if Blevins established that prison officials' failure to comply with BOP rules impeded her from accessing the administrative appeal process, that

does not establish a due process violation. *Wolff*'s minimum due process requirements for prison disciplinary proceedings do not include the right to an administrative appeal. Moreover, a violation of administrative rules of procedure does not equate to a constitutional deprivation of due process. *Hildebrandt v. Butts*, 550 F. App'x 697, 700 (11th Cir. 2013) (holding that inmate's due process claim "misses the mark by equating state-law administrative procedure with constitutional due process. Federal due process does not require that . . . prison officials strictly comply with administrative regulations governing disciplinary hearings in the prison setting.").

Contrary to Blevins's argument, (*see* Doc. 27, p. 2 in ECF), her expectation of receiving administrative review is not in and of itself a liberty interest protected by the Due Process Clause. *See Olim v. Wakinekona*, 461 U.S. 238, 249, 250, 103 S. Ct. 1741, 1747-48 (1985) (holding that prison regulation created no liberty interest entitled to protection under the Due Process Clause, and observing that: "Process is not an end in itself. Its constitutional purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement."); *Bingham v. Thomas*, 654 F.3d 1171, 1177 (11th Cir. 2011) (holding that an inmate has no constitutionally-protected liberty interest in access to a prison's administrative grievance procedure); *Flick v. Alba*, 932 F.2d 728, 729 (8th Cir. 1991) (holding that federal prison administrative remedy procedures "do not in and of themselves create a liberty

interest in access to that procedure"); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (holding that "the Constitution creates no entitlement to grievance procedures or access to any such procedure voluntarily established by a state").

The liberty interest at issue here is the deprivation of Blevins's GCT. As stated earlier, constitutional due process does not require administrative review of the DHO's decision to revoke Blevins's GCT.

Finally, Blevins fails to show she was prejudiced by the lack of administrative review. The fact that Blevins has obtained, in this proceeding, judicial review of the merits of her claims challenging the DHO's decision demonstrates that her ability to obtain the type of review envisioned in *Wolff* was not compromised. *See Griffin v. Ebbert*, 640 F. App'x 181, 184 (3d Cir. 2016) (holding that inmate failed to establish a due process violation arising from an 18-month delay in receiving the DHO's report, because he failed to demonstrate he was prejudiced by the delay and because he received all the process he was due under *Wolff*.).

Accordingly, Blevins's Grounds Three and Five also provide no basis for habeas relief.

### D.    Ground Four: "Disciplinary Rules are Unconstitutional"

Blevins's final contention is that "the disciplinary rules are unconstitutionally vague, allow too  much room for staff interpretation and deprive her of the right to defend herself." (Doc. 6, p. 4). The Government argues that Blevins's claim, itself,

is too vague and conclusory insofar as it fails to "challenge any particular rule or explain why any particular rule or set of rules is unconstitutionally vague." (Doc. 24, p. 9). The Government contends that if Blevins is challenging the rule prohibiting "fighting with another person", her claim is meritless because "a person of ordinary intelligence would understand that rule prohibited the conduct at issue here." (*Id.*). Blevins responds that "even people of ordinary intelligence" would defend themselves and that the BOP should give notice if inmates are not allowed to defend themselves if attacked by another inmate. (Doc. 27, p. 5).

In *United States v. Batchelder*, 442 U.S. 114, 99 S. Ct. 2198 (1979), the Supreme Court held:

> It is a fundamental tenet of due process that "[n]o one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes." *Lanzetta v. New Jersey*, 306 U.S. 451, 453, 59 S. Ct. 618, 619, 83 L. Ed. 888 (1939). A criminal statute is therefore invalid if it "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden." *United States v. Harriss*, 347 U.S. 612, 617, 74 S. Ct. 808, 812, 98 L. Ed. 989 (1954).

*Id.*, 442 U.S. at 123, 99 S. Ct. at 2203 (additional citations omitted); *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S. Ct. 1855, 1858 (1983) ("[T]he void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited[,] and in a manner that does not encourage arbitrary and discriminatory enforcement.").

The BOP rule at issue prohibits fighting in any form. Blevins had fair notice that she could not fight with another inmate for any reason. She reasonably would be expected to know that her actions on August 21, 2016, constituted fighting with another person. *Adams v. Gunnell*, 729 F.2d 362, 369 (5th Cir. 1984) (holding that courts defer to the interpretation of rules by prison officials unless "fair notice" to a prisoner of the meaning of the rule was "clearly lacking.").

Blevins's contention that she was acting in self-defense and that the rule prohibiting fighting did not put her on notice that she was prohibited from defending herself is simply another way to challenge the DHO's determination that Blevins committed the prohibited act of fighting with another person. This court already has found that some evidence supports the DHO's decision that Blevins was actively fighting. *See, e.g., Godbey v. Warden, F.C.I. Williamsburg*, No. 9:15-4233-JMC-BM, 2016 WL 8673002, at *9 (D. S.C. Sept. 23, 2016) (rejecting prisoner's claim that BOP rule prohibiting "fighting with another person" was unconstitutionally vague; "[A]n ordinary person exercising ordinary common sense can sufficiently understand what fighting with another person entails."); *Mitrione v. Martinez, Warden, Fed. Prison Camp*, No. Civ. 05-4072, 2006 WL 533419, at *2-3 (D. S.D. Mar. 2, 2006) (rejecting federal prisoner's due process claim that BOP rule prohibiting "fighting with another person" was unconstitutionally vague and failed to put him on notice that defending himself would violate the rule; "[T]he rule

prohibits fighting in any form and Petitioner had fair notice he could not fight with another inmate for any reason.").

Therefore, Blevins also cannot prevail on this claim.

## IV.   Conclusion

For the reasons set forth above, the undersigned respectfully **RECOMMENDEDS** that:

1.     Petitioner's second amended habeas corpus petition under 28 U.S.C. § 2241 (Doc. 6) be **DENIED** with prejudice.

2.     The Clerk of Court be directed to close the case file.

At Panama City, Florida this <u>21st</u> day of May 2019.

/s/ *Michael J. Frank*

**Michael J. Frank**
**United States Magistrate Judge**

## <u>NOTICE TO THE PARTIES</u>

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u> A copy of objections shall be served upon all other parties. If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.